UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal No.  99cr10171-NG |
| | ) | |
| **JOHN TIBBS,** | ) | |
|     **Defendant.** | ) | |

**GERTNER, D.J.**

**MEMORANDUM AND ORDER RE:**
**RETROACTIVE APPLICATION OF SENTENCING GUIDELINES**
January 8, 2010

On February 5, 2001, John Tibbs ("Tibbs") pleaded guilty to a superseding information pursuant to a plea agreement.  The information alleged conspiracy to distribute cocaine base, use of a communication facility in a drug transaction and conspiracy to assault with a dangerous weapon.  Tibbs was sentenced to 324 months' imprisonment.

On June 15 and 18, 2009, defendant filed motions for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense (documents ##174 and 186), which the Court must deny.

Congress provided for the reduction of sentences based on amendments to the U.S. Sentencing Guidelines (U.S.S.G.) in 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In 2007, the Sentencing Commission amended U.S.S.G. § 2D1.1, reducing the base offense level for most quantities of crack cocaine by two levels.  U.S.S.G. Supp. to App. C, amend. 706

(2008).[1] On December 11, 2007, the Commission voted unanimously to make that amendment retroactive, effective March 3, 2008. Id., amend. 713. The applicable policy statement issued by the Commission states that a reduction "is not consistent with this policy statement and therefore is not authorized" if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B).

In light of these amendments, Tibbs moves for a reduction under 18 U.S.C. § 3582(c)(2). To be eligible for such a reduction, he must show that his original sentence was "based on" the drug quantity guidelines that were subsequently lowered.

In United States v. Caraballo, 552 F.3d 6 (1st Cir. 2008), the court rejected a reduction in a case comparable to Tibbs' because the ultimate sentence was driven not by the crack guidelines but rather the career offender provisions. The defendant pleaded guilty to two counts of possessing crack cocaine with intent to distribute in April 2005. Caraballo, 552 F.3d at 7. The Court calculated the crack guideline range, a range then trumped by the career offender provision of the Sentencing Guidelines. The career-offender guideline raised the defendant's base offense level from 22 to 32. After applying a three-level reduction for acceptance of responsibility, the defendant was left with a total offense level of 29 and a criminal history category of VI, which corresponded to a guidelines range of 151 to 188 months. Id. at 7-8. The district court granted a variance based on the defendant's deteriorating health, not the crack guidelines. Id. at 8. The Court then imposed a sentence of 108 months. Id. Following the

---

[1] This was done in recognition that the 100-to-1 disparity between crack and cocaine drug sentencing "significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere." U.S.S.G. Supp. to App. C, amend. 706 (2008) ("Reason for Amendment"). The Commission called for Congress to correct the disparity enshrined in the mandatory minimums of the Anti-Drug Abuse Act of 1986. It further explained that "the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems." Id.

amendments to the drug quantity guidelines discussed above, the defendant petitioned for a reduction. The First Circuit found him ineligible:

> Refined to bare essence, the defendant's suggestion is that, even though his sentence was not dictated exclusively by the crack cocaine guideline, it was "based on" that guideline because that guideline was a way station along the road that the district court traveled in arriving at the appropriate sentencing range. He insists that, given this imbrication, Amendment 706 unlocks section 3582(c)(2) and authorizes the district court, on his motion, to recalculate his sentencing range and determine anew, in light of generally applicable sentencing factors, see 18 U.S.C. § 3553(a), whether a sentence reduction is warranted.
> . . . .
> The defendant's argument that this oblique reference to the crack cocaine guideline was enough to trigger section 3582(c)(2) disregards the way in which the career offender guideline operates.
> . . . .
> [T]he career offender guideline provided the higher offense level and, thus, yielded a more punitive sentencing range. That was the range that the district court actually used at sentencing. Consequently, to say that the defendant's sentence was "based on" the crack cocaine guideline strains credulity. Reaching that result would require us to rewrite section 3582(c)(2) and, in the bargain, invade Congress's exclusive preserve.

Id. at 9-10; see also United States v. Cruz, No. 96-76-P-H-01, 2008 WL 2967527, at *1 (D. Me. July 31, 2008) (ruling that defendant was not eligible for reduction based on crack revisions because his "status as a career offender drove his 360-month sentence, not his drug quantity").

I distinguished Caraballo in United States v. Hargrove, 628 F. Supp. 2d 241 (D. Mass. 2009), in which I noted that the First Circuit has not foreclosed the possibility of a more nuanced approach, namely where the final sentence depended more directly on the crack guidelines range. See Hargrove, 628 F.Supp. at 244. In the instant case, the standard I articulated in Hargrove does not apply. Amendments in the crack guidelines would not have affected Tibbs' sentence in any way.

As indicated in the presentence report at paragraphs 23-31, the Offense Level Computation was determined using the murder guidelines.  Moreover, there was a plea agreement here, which indicated that the parties stipulated to the Guideline range.  Section three of the plea agreement states the following:

> The parties stipulate, and this agreement specifically establishes, pursuant to U.S.S.G. § 1B1.2(a), that the defendant committed the more serious offense of killing Steven Sealey while engaged in a drug conspiracy involving more than 50 grams of cocaine base[,] in violation of 21 U.S.C. 848(e).  As a result, the parties agree that . . . the base offense level applicable to the murder of Steven Sealey is 43 pursuant to U.S.S.G. § 2A1.1; and that [the] [d]efendant is a Criminal History Category V. Thus, the parties will take the position that the guideline range is 27 years, the maximum statutory penalty under this agreement.

Indeed, the defendant's plea was offered as a binding plea agreement between the parties, pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure.

Since Tibbs' sentence was not at all based on the crack-cocaine guidelines, no further reduction is warranted.  Therefore, defendant's Motions for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense **(documents # # 174 and 186**) are **DENIED**.

**SO ORDERED.**

**Date:   January 8, 2010**          */s/ Nancy Gertner*
                                     **NANCY GERTNER, U.S.D.C.**